IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**BRENDA DAVIS**                                                                                              **PLAINTIFF**

v.                                                                                    Civil No. 1:20-cv-18-HSO-RHWR

**HUNTINGTON INGALLS, INC.**
*and* **REGINA MCMILLAN**                                               **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION [56] FOR SUMMARY JUDGMENT

**BEFORE THE COURT** is the Motion [56] for Summary Judgment filed by Defendants Huntington Ingalls, Inc. and Regina McMillan, filed on June 25, 2021. This Motion is fully briefed. Having considered Defendants' Motion [56] on its merits, the related pleadings, the record, and the relevant legal authority, the Court is of the opinion that the Motion [56] for Summary Judgment should be granted. Plaintiff Brenda Davis's claims should be dismissed with prejudice.

### I. BACKGROUND

A.    Factual background

Plaintiff Brenda Davis ("Plaintiff" or "Davis") had worked at Defendant Huntington Ingalls, Inc. ("Ingalls" or "Defendant") for 21 years when she was terminated on March 27, 2019. Compl. [1-1] at 8. Davis alleges in her Complaint that she was fired because of her sex and raises claims against Ingalls for sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et*

*seq.*, and for wrongful termination under state law. She also advances a claim for tortious interference with employment against Defendant Regina McMillan ("McMillan"). Compl. [1-1] at 6.

According to Davis, the series of events leading to her termination began when McMillan, another Ingalls employee, allegedly sold drugs on company property. Compl. [1-1] at 7. Davis claims that she reported McMillan's actions to McMillan's supervisor, *id.*, but a few days later, McMillan filed a grievance against Davis with the Ingalls Labor Relations Department, claiming that Davis was harassing her and had called her a homophobic slur. *Id* at 7. A security camera captured this interaction on video, albeit without audio. Mot. [56-29]. After conducting an investigation, Ingalls fired Davis on March 27, 2019, on grounds of (1) harassing McMillan; (2) lying to Ingalls investigators who were investigating the claims of harassment; and (3) interfering with Ingalls's investigation into Davis's conduct. Ex. [56-11] at 4-5; Ex. [56-19] at 18-19. Davis claims that her termination was due to her sex, because similarly situated male employees had not been terminated for violating Ingalls's policies. In her Complaint, she also alleges discrimination because her replacement was a man, but she has produced no evidence of this during discovery. Compl. [1-1] at 8.

Defendant Ingalls maintains that Davis was not terminated because of her gender; rather, she was terminated for legitimate reasons. Mem. [57] at 11. It contends that Davis had been issued many written disciplinary warnings throughout her career at Ingalls, that she served nine different disciplinary layoffs,

and that she had repeatedly bullied others on the job. Ex. [56-1]. Ingalls further maintains that Davis harassed six different women, including McMillan. Ex. [56-2]. These actions ranged from spreading rumors that someone smelled bad to making false reports of criminal activity to Ingalls's employee concerns hotline. Ex. [56-11] at 1-2. During the investigation into Davis's harassment of McMillan, Davis also purportedly lied to investigators and contacted witnesses, despite being directed not to do so while the investigation was ongoing. *Id.* at 3.

Davis appealed her termination through the Ingalls Dispute Resolution Process, then again through its Management Appeals Committee. Mem. [57] at 11. When Ingalls declined to reinstate her, she filed a complaint with the EEOC, claiming discrimination on the basis of her race and sex. Mot. [56-8] at 1. The EEOC found no reasonable basis for her claim and rejected it. *Id.*

B.   Procedural background

Davis filed suit in state court against Defendants Ingalls and McMillan on October 23, 2019. Ingalls removed the case on January 16, 2020, on grounds of federal question jurisdiction. Not. of Removal [1-1] at 1. Defendants have now filed the instant Motion [56] for Summary Judgment, arguing that Davis's claims lack sufficient evidence to survive summary judgment and should be dismissed.

II. DISCUSSION

A. Defendants' Motion [56] for Summary Judgment

1. Summary judgment standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant satisfies this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the nonmovant must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

In deciding whether summary judgment is appropriate, the Court views all facts and inferences in the light most favorable to the nonmovant. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). If the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case" at trial, then the Federal Rules of Civil Procedure "mandate" the entry of summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Conclusory allegations and unsubstantiated assertions are not enough for a nonmovant to survive a motion for summary judgment. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

2.     Davis's Title VII sex discrimination claim against Ingalls

Congress enacted Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, to prohibit discrimination in employment on the basis of race, color, religion, sex, or national origin. *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1737 (2020). Where, as here, a plaintiff cannot provide direct evidence of discrimination, courts use the rule established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to evaluate discrimination claims based upon circumstantial evidence.

In order to establish a prima facie case under the *McDonnell Douglas* framework, a plaintiff must prove that:

> (1) she belongs to a protected group, (2) she was qualified for her position, (3) she suffered an adverse employment action; and (4) she was replaced with a similarly qualified person who was not a member of her protected group, or in the case of disparate treatment, that similarly situated employees were treated more favorably.

*Nasti v. CIBA Specialty Chemicals Corp.*, 492 F.3d 589, 593 (5th Cir. 2007) (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001)).

> The plaintiff "carr[ies] the initial burden under the statute of establishing a prima facie case of racial discrimination." Once the plaintiff has met this burden, it "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." If the employer has articulated such a reason, then the plaintiff must show that the stated reason "was in fact pretext."

*Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020) (quoting *McDonnell Douglas Corp.*, 411 U.S. at 804).

a.     Davis's prima facie case of sex discrimination

Davis has successfully established the first three prongs of a prima facie case of sex discrimination. First, she is a woman, a protected group under Title VII.

5

Ingalls contests the second prong of the prima facie case, claiming that Davis was not qualified for her position at the company because she lacked the interpersonal skills required to be a manager, but it does not ask the Court to find that she was unqualified at this stage in the analysis. Mem. [57] at 15. For that reason, the Court will continue to the third prong, and finds that Davis can also establish that she suffered an adverse employment action because it is undisputed that she was terminated.

Under the fourth prong of the analysis, Plaintiff must show that she was replaced by someone outside of her protected class, or that similarly situated employees were treated more favorably than her. *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990). First, Davis has not shown that she was replaced by someone outside of her protected class. Davis alleged in her Complaint [1-1] that her replacement was a man by the name of Michael Cowan. Compl. [1-1] at 8. Throughout discovery and in response to Defendants' Motion [59] for Summary Judgment, however, she has not submitted any evidence that he, or anyone else outside of her protected class, replaced her. In fact, Davis does not argue in her Response to Defendants' Motion [59] that her replacement was a male.

To establish that an employee was similarly situated, Davis must show "that the misconduct for which she was discharged was nearly identical to that engaged in by a[n] employee [not within her protected class] whom [the company] retained." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001)(citations omitted). Courts have repeatedly held that "nearly identical" circumstances

6

requires symmetry in details of the entire circumstances surrounding the allegedly discriminatory action, ranging from nearly identical actions that led to discipline, *see Green v. Armstrong Rubber Co.,* 612 F.2d 967, 968 (5th Cir. 1980) (the fired plaintiff used a blade-like work tool in a fight with another employee who was not fired because he did not use any dangerous work tools in his fight), to similar past disciplinary history, *see Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (holding that even though white employees were not disciplined for identical action, the more frequent recurrence and financial cost of plaintiff's actions made the circumstances not identical). Therefore, Davis must show that a male employee with a similar disciplinary history acted similarly under nearly identical circumstances, and that Ingalls failed to fire him for those actions.

Ingalls has identified three grounds for its termination of Davis: (1) her harassment of McMillan; (2) her lying to investigators during the subsequent investigation; and (3) her interference with Ingalls's investigation into her conduct by contacting witnesses. Ex. [56-11] at 4-5; Ex. [56-19] at 18-19. Davis has attached as evidence an Exhibit [67-13] to her Response which lists eighteen male employees and briefly summarizes their infractions and resulting punishments. However, the list does not provide sufficient details regarding the circumstances or disciplinary histories of these comparators to establish that they qualify as apt comparators under Fifth Circuit precedent. Within her Response, Plaintiff also references the disciplinary record of S.C. Black, an Ingalls employee who allegedly discussed an ongoing investigation with other employees. Mem. [66] at 20.

7

The first justification for Davis's termination was her harassment of McMillan. Of the male employees listed in Davis's Exhibit [67-13], ten had engaged in some form of harassment, ranging from sexual harassment to "treating craft personal [sic] wrong." Ex. [67-13] at 1. However, Davis offers no specific information explaining the details surrounding any of their offenses, and her Exhibit contains few if any facts sufficient to draw comparisons between those cases and her own. This is insufficient at the summary judgment stage. *See Manaway v. Med. Ctr. of Se. Texas,* 430 F. App'x 317, 322-23 (5th Cir. 2011)(holding that other employees were not apt comparators even if they allegedly engaged in similar conduct, because the plaintiff did not present evidence that they had a similar disciplinary history as the plaintiff).

The second justification for Davis's termination was her dishonesty to Ingalls investigators during the investigation of her harassment of McMillan. In her interview during the investigation, Davis denied following McMillan through an employee entrance while calling her homophobic slurs; however, a Human Resources manager was presented with security video footage and statements from witnesses establishing that Davis had in fact done so. Ex. [56-11] at 3. Davis has offered no evidence that any of the comparators on her list lied to investigators, nor does she identify any such comparators in her Response. This is likewise insufficient to support a prima facie case.

The third and final justification for Davis's termination was her interference with the investigation by discussing it with a future witness. Plaintiff asserts that

S.C. Black and two other men on her list of comparators discussed an investigation with other employees; however, she has not shown that the other individuals with whom these employees discussed their investigations were potential witnesses, or whether these purported comparators also had been specifically directed not to discuss the investigation, as Davis was. Ingalls fired Davis for interfering with the investigation by talking to an employee whom she knew would be called as a witness. Ex. [56-11] at 4-5. With regard to S.C. Black's interactions with witnesses, Davis only mentions "other employees." Resp. [66] at 20. If Black was not talking to potential witnesses, he was not interfering with his investigation in the same manner as Plaintiff. For this reason as well, he is not an apt comparator.

In conclusion, because Davis has failed to produce sufficient evidence of any similarly situated male employees who engaged in similar conduct under similar circumstances, and because she has failed to produce sufficient evidence that she was replaced by someone outside of her protected class, she cannot make out a prima facie case of discrimination.

b. <u>Whether Ingalls has articulated legitimate nondiscriminatory reasons for terminating Davis's employment and whether Davis has shown that Ingalls's articulated reasons were mere pretext for discrimination</u>

Even if Davis were able to establish a prima facie case of discrimination, her claim would still not survive summary judgment. Under the *McDonnell Douglas* standard, if a plaintiff is able to establish a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision. *Sanders*, 970 F.3d at 561. If the defendant does so, the plaintiff must demonstrate

that the stated reason is "mere pretext." *Id.* To avoid summary judgment, "Plaintiff must address each and every one of the nondiscriminatory reasons for firing that the defendant put forward." *Wallace,* 271 F.3d at 220 (citations omitted).

Ingalls has articulated three nondiscriminatory reasons for its termination decision and has submitted the necessary evidence to carry its burden of production. *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). Ingalls has submitted witness statements, Ex. [56-3] [56-6], deposition testimony, Ex. [56-16] [56-21] [56-38], and internal investigation documents, Ex. [56-33], in support of its Motion [56] for Summary Judgment, which are sufficient to articulate legitimate and nondiscriminatory reasons for its actions. The burden thus shifts back to Davis to show that there is "substantial evidence" that each of the proffered reasons for Ingalls's employment decision was pretextual. *See Laxton v. Gap Inc.,* 333 F. 3d 572.578 (5th Cir. 2003).

Davis has not submitted sufficient competent summary judgment evidence to show that Ingalls's reasons were a mere pretext for sex discrimination. As the Court has already determined, Davis presents only a list, Ex. [67-13], of male employees who remained employed by Ingalls after different disciplinary actions, but this list does not identify any apt comparators. Davis also contests Ingalls's evidence that she harassed McMillan by asserting that the video capturing the harassment has no sound, Resp. [66] at 12, but Ingalls has presented the deposition testimony of witnesses to the harassment who did overhear the words Davis yelled at McMillan, Ex. [56-16] at 2. Davis claims she was "repeatedly disciplined for doing her job," *id.*

at 17, and that her coworkers did not like her because she reported violations of company policy when she saw them occurring, *id.* at 5-6. However, Defendants have presented substantial evidence that each of its proffered reasons were legitimate. Specifically, Ingalls has submitted evidence that Davis had a long disciplinary history for harassing her co-workers, including Defendant McMillan, Ex. [56-1], that she lied to the Ingalls investigators who were investigating the claims against her, Ex. [56-11] at 4-5, and that she discussed the investigation with a witness, despite being told to not do so, *id.* at 4.

An employer's proffered reason for termination need not be correct so long as it is nondiscriminatory. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002). Rather, the question is whether the evidence supports an inference that the employer intentionally discriminated against an employee. *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003). Plaintiff has not presented such evidence, and as such her Title VII claim cannot survive summary judgment.

3. <u>Davis's state-law wrongful termination claim against Ingalls</u>

Under Mississippi law, Plaintiff was an at-will employee, meaning that Ingalls could fire her at any time for any reason. *Swindol v. Aurora Flight Scis. Corp.*, 194 So. 3d 847, 850 (Miss. 2016) ("either party may terminate the employment at will, and the parties 'may have a good reason, a wrong reason, or no reason for terminating the employment contract.'") (citing *Kelly v. Mississippi Valley Gas Co.*, 397 So. 2d 874, 874–75 (Miss.1981)). Plaintiff bases her state-law wrongful termination claim on the public policy exception to the employment-at-will doctrine

11

established by *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603, 607 (Miss. 1993), which held that "an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing an action in tort for damages against his employer." *Id.* at 607.

The Mississippi Supreme Court has limited *McArn* by requiring that the alleged illegal acts be related to the employer's business. *See DeCarlo v. Bonus Stores, Inc.* 989 So. 2d 351, 357 (Miss. 2008); c*ompare Willard v. Paracelsus Health Care Corp.,* 681 So. 2d 539, 543 (Miss. 1996) (employees terminated for reporting embezzlement of company money satisfied the *McArn* exception) *with Jones v. Fluor Daniel Servs. Corp.*, 959 So. 2d 1044, 1047 (Miss. 2007) (employees terminated for reporting a manager's use of racial slurs did not satisfy the *McArn* exception, because use of racial slurs had "nothing to do with the business" of the company).

Plaintiff asserts that she was terminated for reporting that McMillan engaged in illegal activity on Ingalls's property. Specifically, she claims that she was fired in retaliation for reporting that McMillan was selling drugs, but this plainly has no relation to Ingalls's business as a shipyard. Ingalls's business is shipbuilding and is entirely unrelated to drugs. Thus, even if it were true that McMillan was in fact engaged in the illegal activity of selling drugs (which Ingalls concluded she was not), Plaintiff's claim that she was fired for reporting this would not fall within the protection of *McArn*. Defendants are entitled to summary judgment on this claim.

4. <u>Davis's state-law tortious interference with employment claim against McMillan</u>

Plaintiff contends that by filing a grievance accusing her of harassing her and calling her a homophobic slur, McMillan tortiously interfered with Davis's employment. There are four elements to a claim for tortious interference with employment: (1) the defendant's actions were intentional and willful; (2) the actions were calculated to harm the plaintiff; (3) the actions were conducted with an unlawful purpose of causing harm, without right or justifiable cause (which constitutes malice); and (4) actual harm occurred. *Hollywood Cemetery Ass'n v. Bd. of Mayor & Selectmen of City of McComb City*, 760 So. 2d 715, 719 (Miss. 2000); *see also Cooper Tire & Rubber Co. v. Farese,* 423 F.3d 446, 458-59 (5th Cir. 2005) (citing *PDN, Inc. v. Loring,* 843 So. 2d 685, 688 (Miss. 2003)).

The Complaint alleges that McMillan's actions were done "maliciously with the intent to cause Plaintiff professional and personal injury." Compl. [1-1] at 10. Plaintiff has not submitted competent summary judgment proof from which a reasonable jury could conclude that the third element required for a finding of tortious interference is satisfied, that is that McMillan's report was done with the unlawful purpose of causing damage or loss without right or justifiable cause.

Nor has Davis submitted evidence of malice, and "[m]ere knowledge of a detrimental effect on [the plaintiff] does not constitute evidence that [a defendant's] actions were calculated to cause damage." *Brown v. Cooper Tire & Rubber Co.*, No. 1:13-CV-00176-SA-JMV, 2015 WL 4477564, at *6 (N.D. Miss. July 22, 2015)

(citations omitted). Additionally, a claim for tortious interference requires "intermeddling . . . without sufficient reason." *Morrison v. Mississippi Enter. For Tech., Inc.,* 798 So. 2d 567, 575 (Miss. Ct. App. 2001). If a defendant's actions were related to a "legitimate, employment-related objective," such actions cannot "give rise to an inference of malice." *Hopewell Enter., Inc. v. Trustmark,* 680 So. 2d 812, 818–19 (Miss.1996).

Here, it is beyond dispute that McMillan reported Davis based upon her belief that Davis was harassing her and directing homophobic slurs towards her. This constitutes a legitimate employment-related objective and as such it will not support a claim for tortious interference. Summary judgment is appropriate on this claim.

### III. <u>CONCLUSION</u>

To the extent the Court has not specifically addressed any of the parties' arguments, it has considered them and determined that they would not alter the result. The Court finds that Defendants' Motion [56] for Summary Judgment should be granted.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendants Huntington Ingalls, Inc. and Regina McMillan's Motion [56] for Summary Judgment is **GRANTED**, and Plaintiff Brenda Davis's claims against Defendants Huntington Ingalls, Inc. and Regina McMillan are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 17th day of December, 2021.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE